The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. The case for argument this morning is 18-1364, SIPCO v. Emerson Electric. Mr. Gonzales, whenever you're ready. May it please the Court, the Board erred when it denied SIPCO's request to correct a priority claim error during the IPR proceeding. This error, in turn, caused the Board to err in ruling that claims 3, 5, and 11 of the 732 patent, which is not prior aught, under the corrected priority claim. Mr. Gonzales, this is Judge Moore. As simply a housekeeping matter, given that there was earlier briefing filed in this case and we retain jurisdiction, I just want to ask you, I understand, especially from your reply brief, that you've withdrawn and are not challenging on the merits, the final decision. You are challenging the failure to give leave to file a distributive correction to correct the priority problem, but you no longer raise, and there are not before us, any merits-based challenges to the final decision. Is that correct? Yes, you have it correct, Your Honor. Okay. Please proceed. Well, the Board made two significant errors. First, the Board denied SIPCO's request for the certificate of correction based solely on its determination that SIPCO's mistakes were deliberate, and this is at page 527 of the Joint Appendix. The Board's determination is wrong for two reasons. First, as explained by this court in Honeywell v. Akama, which I cited in my briefs, the Board's denial violated the Administrative Procedure Act because the director, not the Board, should determine whether the mistakes occurred in good faith, that they were not deliberate. Second, as explained by this court in Honeywell, Section 255 does not grant the Board authority to determine whether a mistake in an issued patent is of minor character or occurred in good faith. That authority is instead expressly granted to the director. Here, the Board made the same mistakes that it did in the Honeywell IPR. It concluded that the priority errors were made with deliberate indifference and not in good faith, when that determination should have been made by the director. Section 255, the Patent Office's own regulation, indicates that the Board has a limited role in assessing a party's request for a certificate of correction. By statute, the PTO director has the authority to evaluate and decide the ultimate merits of a requested certificate of correction. The director has not delegated that authority to the Board. In addition, the Board's actions are arbitrary… Excuse me. Can you hear me? I'm sorry. I'm interrupting you. I apologize, but we're short in time. This is Judge Proust. There's another issue here, I think, with respect to jurisdiction. Am I correct? Are you still pressing the point that you should be able to have review over the Board's ultimate decision on the remand that we provided? Yes, that's correct. Okay. And I'm just…I'm wondering about…I mean, the argument you've pressed so far isn't one that implicates jurisdiction, right? It's deciding whether the Board, in the initial stage, was correct in not entertaining your motion, right? Yes, that's correct. We believe the Board incorrectly denied the patent owner to write the correct…the priority claim during the IPR. Yes. So that issue is…I don't think it's disputed that that question is before us. The question is whether or not you were required to appeal the second Board decision on remand. Are you…continue to protest whether or not it was required to file a motion to appeal? A notice of appeal, I'm sorry. Yes, that was explained on page…starting at page 16 of my reply brief, that I did file a notice of appeal. This court retained jurisdiction, and so there was no need to file a second 16 through, I guess, 19 or 20 on the reply brief. Well, we…certainly, we retained jurisdiction over something. I guess the question is what? How could we have retained jurisdiction or had jurisdiction over this question about the impact of the Certificate of Correction when we sent it back to the Board? We couldn't have both had jurisdiction at the same time, right? Yes, but from the order that was issued, it indicates that the court, the Federal Circuit, retained the jurisdiction over the matter, and that they were just asking for the Patent Office's sort of indicative opinion on what it felt on a particular issue. So you understood it to just be sort of an advisory opinion that we were asking them for, even though we used the word remand? I mean, remand suggests something more concrete, does it not? When the court said in the order that it was retaining jurisdiction over the appeal, then I interpreted that to mean that I did not need to file a second notice of appeal, because this court has continuously had jurisdiction since CIPCO timely filed its notice of appeal on December the 21st, 2017. Well, let me just ask you one other sort of alternative argument on that, and that is what if when we sent it back on remand for the question of the impact of the subsequent Certificate of Correction, what if Emerson had lost? What if the Board had ruled in your way that it was conclusive, and therefore Emerson didn't have to file a notice of appeal on the Board ruling? How would that have worked, if you had prevailed? I think this was specified, in fact, I know it was specified in the court's order, where it said that within seven days from the date of the Board's decision, the parties are directed to inform this court how they believe this appeal should proceed. So, as long as Emerson was in accordance with the court's order, then... Yes, but read further. I'm sorry to interrupt. I apologize. But read further. Write the sentence following the one you just read, says, any appeal from the Board's decision on this issue will be consolidated with this appeal. So, do you think Emerson would not have had to file a notice of appeal if it had lost before the Board? Well, I can understand there's some ambiguity in the order, but my answer would be yes, as long as Emerson complied with the court's direction that within seven days from the Board's decision, it informed your court how they believe the appeal should proceed. Okay, please proceed. In addition, the Board's decision to prevent the patent owner from correcting the appeal prior to the priority claim during the IPR was arbitrary and capricious because the Board failed to consider an important aspect of the problem, and this is the Miccosukee Tribe case that I cited in my brief. Mr. Weeks, SIPCO's patent prosecution attorney, and a member in good standing of the Georgia Bar and the Patent Bar, declared that the entire delay between the issuance of the 780 patent and the date of the priority claim was unintentional and due to a clerical error. So, if you could please turn to his declaration. This is Judge Proust again. I'm sorry again to interrupt, but the time is short, so I just got to get my questions out in a timely way if I can. If you had prevailed, if the IPR was over and you had gotten your Certificate of Correction at the time, what would be the impact of that? There would have been no final decision on the IPR. In your view, that the Board would have had to drop the IPR because the Certificate of Correction had been issued? My view is the Board would have issued a final decision saying that these particular claims were patentable because the reference that was asserted, the 732 patent, it was not in fact prior art. And in fact, this is what's occurred. If you take a look at page 7 of my reply brief, I referred to prior PTAB proceedings. For instance, in Aceto Agricultural Chemical, which is IPR 2016-0076, the Board ordered that the patent author was authorized to file a request for a Certificate of Correction to correct a typographical error in Claim 9. And the Board further ordered that the parties would proceed with the corrected Claim 9 unless a contrary decision on the request. So in your view, if the Board had sent it over and a Certificate of Correction is issued at the time an IPR is pending, your view is that the IPR that was instituted is automatically converted to reflect the corrected patent as opposed to the original patent? I guess because that's what's happened in IPRs and CBMs at the PTAB in the cases that I cited in the reply. There's also another case where they did the same thing, United Services Automobile Association. What is your view of the impact of the prior version of the patent that was corrected? Is it gone? Can you ever assert it to get retroactive damages for the time it was in effect? What is your view of the patent, not the corrected patent, but the pre-corrected patent claim? Well, my view is that the Patent Office should have proceeded the same way it proceeded in the IPRs and CBMs where this same issue came up before, which is that they make a ruling on the corrected patent. But that's not my question. I'm sorry if I misspoke. My question is, what is the impact of, if any, of previously uncorrected patents? Can that be asserted in any way, shape, or form, for damages, for example? Does it have any life at all once it's corrected, the uncorrected version of the claims? Yes, I'm trying to answer your question. I think that during the IPRs, they're supposed to review the corrected version of the claims. That's not what she's asked. Answer her question. What we want to know is, are you able to assert the uncorrected patent? Yeah, I'm not sure. Well, maybe the government will be able to clarify. Thank you. Why don't we hear from Emerson's counsel? Thank you. Mr. Davis. Yes, Your Honors. May it please the Court. The Board's findings here that the claims of the 780 patent should be affirmed for at least three reasons. First, SIPCA waived its appeal as to the decision on remand by failing to file a notice of appeal. Second, the text and statutory scheme of Section 255 confirmed that the certificate is not retroactive and cannot impact this IPR, particularly where the certificate issued both after the petition was filed but also after the final written decision issued. And third, even if the certificate of correction could have had an impact on the IPR, the Board properly exercised its discretion to stay SIPCA's request for leave to seek a certificate of correction after SIPCA had repeatedly failed to exercise the requisite diligence to properly seek a certificate on three separate occasions. Mr. Davis, let me bring you up to where we ended with your friend, which is, why? Why do we need to be here unless it's your view that the original claims before they were corrected can still be asserted retroactively? Otherwise, it doesn't matter, does it? I mean, if the certificate acted to wipe out those claims, then there's no reason to be here caring about this final written decision. So is it your view that in the absence of this final written decision, the other side would have the ability to assert the uncorrected claims in an action? Do you understand my question? Yes, Your Honor. I believe the answer to your question is that SIPCO should not have the uncorrected claims in this context where it is conceded those uncorrected claims are unpatentable without the certificate of correction. So why are we here? Your Honor, I don't think that SIPCO has that same view. It was the Board's determination that the claims as they had issued before the certificate of correction are unpatentable and thus by statute under 318B should be canceled confirming that unpatentability determination. So your argument is this case is not moot because SIPCO has not conceded that it can't correct. Correct, Your Honor. A trial certificate should issue confirming the unpatentability because SIPCO's arguments persist here in attempting to assert those claims. And to be clear, SIPCO's appeal as it initially was launched addressed all 15 of those claims. In its reply brief, it narrowed that down and is no longer contesting the unpatentability of 12 of the 15 claims. And as to the three remaining claims, it's Emerson's view that those claims should also be canceled by statute under 318B with the trial certificate. Well, SIPCO's not, they made clear, I mean that was the correction I asked for at the beginning of his argument, that they're no longer appealing anything on the merits with regard to those three claims either. They're only appealing that the PTO erred or abused its discretion procedurally by refusing to allow them to correct during the IPR. Right. Yes, Your Honor, I believe that SIPCO isn't disputing that without the certificate the claims would be unpatentable and thus wouldn't be enforceable. And at this point as well, the 780 patent expired three months after the certificate of correction had issued. And there would be a very limited window in which anything could be enforced if that were even proper. And I guess the question here is whether the PTO has any accountability problems. But that would be an issue for a separate court as the United States recognizes in their amicus brief if SIPCO did ever attempt to assert the 780 patent, these three claims of the 780 patent again. Can I, I should know this, but I'm sorry, a lot of time has passed in this appeal. Is there a pending, is there pending district court litigation concerning the uncorrected claim? No, there is not, Your Honor. The SIPCO during the pendency, I believe, of the IPR dropped the 780 patent from the co-pending district court litigation, which has been stayed pending several different IPRs. So I guess again, why are we here? You've got an expired patent with no pending litigation that has a certificate of correction, but we're supposed to, you know, dive in and decide whether the final written decision correctly invalidated the pre-corrected patent. I mean, I got to be honest. It just seems like a colossal waste of everyone's time. I don't understand why your client is paying you to do this. I don't understand why we're being asked to set aside time to do this. I don't understand why SIPCO is paying its attorney to do this. It seems like a colossal waste of time. Well, should SIPCO ever decide to assert these claims with the patents again, which it appears to intend to do because it has appealed that final written decision, it should be stopped from doing so, particularly in the uncorrected form, because those claims were found unpatentable by the board and that finding should be affirmed. So just to go back to where we started, I just because they're, you know, kind of not acknowledging or not agreeing that they can't ever assert the earlier version of these claims. Is that it? That's it, Your Honor. Yes. The only thing that the board could have addressed was the 780 patent as it had issued prior to the certificate of correction. That's what it did found all the claims unpatentable. SIPCO has appealed that finding and has been maintaining apparently that it's ability to that it still should have the ability to assert those claims. It had initially asserted claims of the 780 patent against Emerson and it's Emerson's view that SIPCO shouldn't be able to assert those claims against anyone because they're unpatentable. On the question of jurisdiction, this is Judge Prost again. Would you acknowledge that the, would you say that the order was at least confusing in terms of the requirements that they would now have to file a new notice of appeal? No, Your Honor. The, I think the order says that the court had retained jurisdiction over the Mr. Gonsalves to, that the last sentence of that order is key. It says any appeal from the board's decision on this issue will be consolidated with this appeal. Thus, there needed to be a separate appeal or separate notice of appeal that SIPCO needed to file. That, that guidance and instruction was reiterated in the board's decision on remand. Again, requiring SIPCO to comply with the notice and service requirements of 37 CFR. Counsel, this is, this is Judge Moore. The order says the motion is granted to the extent the case is remanded for the board to issue an order addressing what, if any, impact the certificate of correction has on the final written decision in this case. That sounds to me like an order asking the PTO to clarify in light of the fact that the certificate of correction issued after the final written decision, does that moot the case? Does it, you know, eliminate need to resolve the case? It sounds like a request by our court for clarification regarding what impact that certificate has on the final written decision. Why is that not part and parcel of the same appeal since we're asking the PTO to address the impact of a certificate of correction on this final written decision, which has been appealed? It, Your Honor, the reason it's not part and parcel of the original appeal is because the, the, the order on, or the decision on remand hadn't, hadn't been handed down yet. And so that's, Well, but that would, that would, that would suggest that you can never ask a court for clarification and have it be part of the original appeal. That would suggest, that would suggest that, that if we ask a court to clarify that an order, the issue clarifying would always require a second notice of appeal every time. That's not true. So that, that can't be right. And Your Honor, paired with, paired with the language here, that the, this court was specifically remanding as to, as to specific claims. So a specific portion of the original appeal was being remanded back down to be reconsidered in light of the certificate of correction. It's, it's the, read as a whole, each of those different components of the, of the order indicates and should have indicated to CIPCO that it needed to file a notice of appeal here. Well, in, in paragraph number three, it then says proceedings are stayed pending the board's decision. And then it says within seven days from the date of the board's decision, the parties are directed to inform this court how they believe this appeal should proceed. And you all did that, didn't you? That's, that's correct, Your Honor. We, we, the parties met and conferred. I, I informed Mr. Gonsalves that he needed to decide what he was going to appeal. He then, we agreed on the notice regarding scheduling, which he informed the court of, but never as part of those, that notice. Did he mention that he was appealing the decision on remand? And that, that last sentence there in paragraph three of the, of the order says that any appeal from the decision on, on remand would have, would be consolidated with this appeal, meaning there's two separate appeals, or there would be if the notice of appeal was, was filed, but, but it was not. I, I, I certainly see that last sentence and that would be the implication of it, which would be you can't consolidate two, an appeal with a non-appeal. It's the consolidation of two appeals. So I, I certainly understand why your argument is that that last sentence makes, should have put Mr. Gonsalves on notice that he needed to file a notice of appeal, but it's the rest of the order that unfortunately sort of, for me at least, makes me question whether the order wasn't, as Mr. Gonsalves expressly stated earlier today, ambiguous at least. And when you have an ambiguous order, it seems kind of unfair to close the doors, doesn't it? Yeah, I, I, in light of the last sentence, I, I hadn't read it as, as ambiguous. And I, I, I took it that the board hadn't either, in light of their decision on remand, again, directing Mr. Gonsalves to file a notice of appeal if that was what he intended to do. That's, that's Emerson's perspective on, on that language. Well, so when you all met and conferred, and then you filed a joint document with the court, or a document submitted by Mr. Gonsalves, articulating the new briefing schedule, he suggested that this was all agreed upon by the parties, is that right? That, that schedule was, Your Honor, there, there was not a discussion as to the issues that he'd be appealing, and there was never a mention that he would be appealing the, the decision on remand. And that, that's, that's, that's the purpose of, under Rule 15.82, SIPCO needed to specify if it wanted that notice regarding scheduling to substitute as a notice of appeal, it would have needed to specify that it was appealing that particular order, such that this court, as well as the director, would have been on notice of, of SIPCO's intent to appeal that decision. If I might just turn to the, to the issue regarding Honeywell, that SIPCO had brought up in its arguments, the board's decision here was completely consistent with this court's decision in Honeywell. The board did not address the merits of SIPCO's request, but instead found that SIPCO, quote, did not provide sufficient justification for the failure to avoid making error after error, end quote, that's in Appendix 555. The board further explained there that it did not overlook the patent owner's explanation for his previous errors, but rather did not find any of it in Appendix 555. SIPCO's repeated errors here, both during prosecution and this, and related patents, and in requesting leave, and the certificate itself, demonstrated a deliberate indifference to, such that SIPCO couldn't continue to interrupt these proceedings, and instead, the board promptly determined that SIPCO needed to wait its turn after we get, being given multiple other chances to seek that certificate. Can you please address, counsel, can you please address SIPCO's argument that the director is the only one with the authority to have done, made this deliberate misinterpretation or decision, and that it had never delegated that to the PTAB, and that thus, the PTAB didn't have the ability, it violated the APA by deciding that issue? Yes, Your Honor, the board didn't address, the board didn't address any of the merits regarding the Section 255 requests. What the board was addressing was whether, was whether SIPCO in seeking, may I just finish the answer, Your Honor? Of course, please. What the board was, was, was addressing was whether SIPCO could provide a sufficient justification for repeatedly making these errors, such that it, which didn't, which didn't go to whether the, the error, the initial error in the patents was intentional, but whether SIPCO was putting enough safeguards in place to avoid, continue making the errors as it repeatedly attempted to request a certificate of correction, and yet each time was being rejected by the Petitions Branch, having to interrupt the IPR proceedings again and again, and at some point, the board had to say enough is enough. It has discretion here as to the order of how each of these proceedings is going to proceed, and it properly exercised that discretion to tell SIPCO that it needed to wait its turn until after the final written decision was issued. My colleagues have no other questions. Let's turn to Mr. Hickman. Thank you. Good morning, Your Honors. May it please the Court. As to the, the question about whether, the Court's question as to whether there is anything left to decide this morning, I generally agree, I think, with the, the points that, that Emerson's counsel made. To put a finer point on, on our brief and the way that we address the issue, I think it was our understanding that even if collateral estoppel applied to most of the claims in this case, that there were still two or three claims that still might have been in play, and so our brief, I think, made an assumption that there still might be the merits of, of claims left to be adjudicated in this appeal, and so- Just a clarification. I'm sorry, Mr. Hickman. This is Judge Crouse. Just to get clarification, if SIPCO, if, if, if somehow this IPR were dismissed, if SIP, could SIPCO continue to assert the claim, any of the, any or all of the claims that were subject to the IPR, retroactive at least for damages purposes, etc., even though there's been a certificate of correction issued? The, the claims of the uncorrected patent, and if we put aside the effect of any collateral estoppel in, in, in this IPR, it is our position that the claims of the uncorrected patent could still be asserted in the trial of actions for correction issued. So if any causes that, that arose while those uncorrected patent claims were still operative, there still might be the potential that those could be asserted. So that, that was sort of a theoretical answer, which, yeah, I, I understand. The theoretical answer is pre-corrected claims could be asserted retroactively, that correction doesn't surrender or, you know, a patent the way reissue does. So I get that. But, but in this case, do you, do you think that's true given SIPCO's admissions at least, at least by the time of the oral argument a few minutes ago where he, Mr. Gonsalves made clear that SIPCO is not continuing to contest any of the merits-based arguments regarding the final written decision? I would agree with that statement, Your Honor. Given, given the apparent concession that on the merits, none of these claims are patentable for the uncorrected patent, I don't believe that they could be asserted at this point. And would that, would that moot the appeal in your view? I mean, such that there's no longer a need to spend any more time on this? Um, I, I think that might be a way to treat this. I think the appeal might be dismissed as moot. Um, if there's no live controversy anymore, um, it, it does seem questionable as to whether there's really anything for the parties to debate or for the court to, to render a decision on at this point. I guess I'm a little unclear on that. If, if we were to say this is all moot, then I don't know, would I, are you clear that SIPCO could never assert any of the previously uncorrected, the, you know, the, the claims before their correction? Well, I, I think, I mean, as I understand it, SIPCO's counsel has agreed that, that none of the claims, claims one through 15 are, are patentable in light of the prior adjudication of the 732 patent. So to me, that would seem to be the, the answer. Um, the certificate of sort of treating the certificate of, the fact that the certificate of correction doesn't apply to the pre, to the uncorrected patent claims doesn't really, um, uh, disrupt, um, that concession of unpatentability at this point. So can I ask just out of curiosity, does the petition deciding body, i.e. the people who decide petitions for corrections, do they talk to the people on the PTAB at all? And the reason I say that is, what a little bit of a mess this has created by having the PTAB, uh, deny the ability to correct, then issue a final written decision, and then the petitions people go ahead and issue a correction almost immediately thereafter. It's kind of a, it seems like one hand might not be aware of what the other hand is doing to some extent, or is that just completely false in that this is normal course, and this is what should happen? What, what is your view of that? Um, if I may answer the question, Your Honor, um, the, of course, I, I just, I heard the tone in the background. Um, it, it's clearly, it's, I, you know, I think we understand the importance of, um, the public would like us to operate as, as a single agency and, and coordination is, is important. Um, I think what I would say here is that, first, let's not forget that this was a mistake by the patentee, that the patentee came in to have sex. Um, the, the petitions branch is the branch that has delegated authority from the director to, to decide the merits of the certificates of correction, and they're the ones who have the expertise in deciding whether, um, the correction would introduce new matter, or whether reexamination would be required, which are some of the, the criteria under Section 255. So, that really is their, their wheelhouse. Um, and, in fact, in Honeywell, that's what this court said, was that the board shouldn't wade into the, um, to the, uh, to the petitions branch's territory to, uh, decide the merits of those issues. Um, I think the facts here and, and, and what led to the certificate of correction being where we had four attempts by, by SIPCO to obtain the certificate before it actually worked. And so, um, you know, the board, the board had to make, had to decide what to do. Motions can, um, require time to decide and, and consume resources of the board. And so, after the first two tries, I believe that the board was justified in telling SIPCO that it needed to wait until after the IPR was concluded. Um, I know your time's up. Can I, Chief, can I ask one more question? Yes, because I have one after yours. Oh, okay. So, so my, my question, uh, to you, Mr. Hickman, is, um, do you agree, uh, I think Emerson did a nice job of explaining why the PTAB was not addressing the merits of the correction petition, um, but rather just addressing whether or not they would permit leave to file such a petition. And then when they were talking about, uh, deliberate indifference, you know, they were talking about deliberate indifference, uh, not about the merits of the petition. Is it, do you agree? Is there anything you'd like to add to that to defend, you know, the agency and the fact that there wasn't some sort of, um, usurpation by the board of the director's authority? Um, I, I agree with what Emerson's counsel said. Um, the, the board did not address things, as I said, they weren't addressing issues such as whether new matter would be introduced as to whether re-examination would be required. Um, the board was making a decision about efficiency and the best way to run the IPR. And, um, I think it was entirely legitimate for the board to say that after two tries and after, um, what seemed to be pretty, um, uh, obvious errors that could have been avoided at the board, um, it was not, it would be inefficient for the board to continue to entertain, um, these motions to go seek the, um, for repeated tries to seek the certificate of correction. Can I, uh, this is Judge Gross, just one final quick question, and this is really a hypothetical, which is if they had gotten the, a patent, if, if one gets, if the patent owner gets the patent corrected during the IPR proceeding, but before a final written decision, uh, would the board not proceed with adjudicating the original claims in the IPR simply because they could be a base, they could be asserted, um, at least with respect to, you know, retroactive damages, um, in the future and, or based on a pending district court proceeding? Um, if I understand, I just want to make sure I understand the court's question. So, the question is would, in that, in that situation, would the board continue with the IPR on the, um, uncorrected patent? Yeah. In my understanding, of course. Um, I think in many cases the board, um, would do so because, um, as in this case, for example, petitioners may have a very vested and important interest in having the, um, patent ability of the uncorrected patent claims adjudicated, um, if they're faced with infringement of those claims, um, in district court. So, the board in many, many cases may have, um, very important reasons to continue with, um, adjudication of those uncorrected patent claims. As we suggested in our brief, there could be rooms for exercise of discretion to terminate if, um, if there are particular effect patterns where, um, it wouldn't make sense to continue, um, with an adjudication of the uncorrected patent. Thank you. Yeah. Do you... Can I... I'm sorry. One more, if you don't mind. Do you... Can the PTO pivot and instead, uh, address the corrected patent claims? I mean, I'm a little nervous, um, about SAS, for example, and whether or not, uh, corrected patent claims, especially depending on the nature of the correction or within the scope of the original petition. And... Yes, I... Yeah. So, my question to you is, can the PTO pivot and decide not to address the original claims, but instead, use the petition as a vehicle for addressing the new claims? I... I don't... I don't think I have a precise answer for that today. In our... In our brief, we suggested that perhaps if the parties agreed that that's how they wanted it to proceed, maybe the board could proceed in that fashion on... on the corrected patent. But, um, but SAS... SAS certainly, um, is a factor, um, on that issue, and it is the... the petition that... that guides the life of the litigation. And, um, and so, in our brief, I think we left open, uh, the possibility that we might... We hedged. Yeah, I got it. But... But we haven't... We haven't had to confront that yet. Okay. Thank you. Thank you. Um, Mr. Gonzalez, uh, I don't know how much time you have for rebuttal, but, uh, um, why don't you proceed? Okay. I'll be brief. Uh, first of all, I should say that, um, in the IPRs and the CDMs where the patent has been reviewed before, um, has proceeded only on the corrected, uh, version of the patent. And this happened in the Aceto Agricultural case that I cited on page 7 of my reply. And it also happened in the United Services Automobile Association case, which was CBM-2016-00063, which is also cited on that same page. Okay. Mr. Gonzalez, let me just ask you... This is Judge Prost. I'm just interrupting you because I think we need clarification on the point that Judge Moore raised at the outset, which is, do you indeed concede that the uncorrected claims are all unpatentable and unenforceable? Well, um, this is what I've been trying to explain. Uh, if the, um, PTAB would have permitted the correction to the priority claim, then the only reference asserted against these three claims would not, in fact, be prior art, so the claims would be patentable. Anything further? Um, sure. The, uh, with respect to, uh, um, the board's decision that the, that the mistakes were deliberate or deliberate indifference, um, that's inconsistent with, uh, Mr. Weeks, the gentleman, the patent prosecution attorney that corrected the priority claim. Um, it's inconsistent with his declaration. He went in detail about why these errors had occurred, and after reading the declaration, it's clear that none of them were deliberate. Okay. So, so we feel that, uh, that decision was wrong and that our client should be put in the position, um, that it would have been in had the PTAB made the correct decision at that point in time. Thank you. Uh, any further questions from the panel? Okay. Thank you. We thank all sides, and the case is submitted. That concludes our proceeding for this morning. Thank you. The honorable court is adjourned from day to day.